UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 10-CR-0339 (PJS/JJK) |
| Plaintiff, | |
| v. | ORDER |
| CRUZ ROSALES (6), | |
| Defendant. | |

Jeffrey S. Paulsen, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Michael C. Hager, HAGER LAW OFFICE, for defendant.

Defendant Cruz Rosales is charged with conspiring to distribute methamphetamine, cocaine, and marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). He is also charged with aiding and abetting the distribution of methamphetamine in violation of 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 2. This matter is before the Court on Rosales's motion to suppress evidence obtained as a result of a search of his carry-on bag at the Minneapolis/St. Paul International Airport on July 31, 2010. Magistrate Judge Jeffrey J. Keyes has held two evidentiary hearings on the motion and has issued a supplemental Report and Recommendation ("R&R") recommending that Rosales's motion be denied. *See* Docket No. 330. Rosales objects to this recommendation. Based on a de novo review, *see* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3), the Court overrules Rosales's objection and denies his motion to suppress.

The background facts leading up to Rosales's arrival at the airport have already been described in detail in the Court's previous order. To summarize, Rosales and defendant Benjamin Perez were observed delivering drugs and money to defendant Noe Alamos Pantoja, who was the subject of a long-running narcotics investigation. The surveilling officers followed

Rosales and Perez to the airport, where they were searched and were each found to be in possession of large amounts of cash.  After an initial evidentiary hearing, Judge Keyes recommended denying Rosales's motion to suppress the cash.  The Court declined to adopt this recommendation, however, because it was not clear who searched Rosales, why he was searched, and where or how the cash was found.[1]

At a second evidentiary hearing, the government introduced evidence about the events at the airport.  Judge Keyes thoroughly described that evidence in the supplemental R&R, and the Court gives only a brief summary here.  After arriving at the airport, Rosales and Perez attracted the attention of agents of the Transportation Security Administration ("TSA").  Based on their observations, the TSA agents decided to conduct a "secondary screening" of Rosales and Perez.  During the secondary screening, a TSA agent searched Rosales's bag and found an unsealed, business-size envelope containing a large amount of cash as well as several vehicle titles and photographs.  Docket No. 329 at 41, 46-47.  The agent did not count the cash, but estimated it to be "easily over $5,000."  Docket No. 329 at 41.  Rosales now seeks to suppress evidence of the cash.

The government argues that the search of Rosales's bag was justified as an administrative search performed for the purpose of ensuring airline security.  *See United States v. Aukai*, 497 F.3d 955, 960 (9th Cir. 2007) (en banc).  Many courts have upheld such searches, and Rosales

---

[1] The lack of clarity was not the fault of Judge Keyes.  As noted in the Court's initial order, the lack of clarity appears to have been the result of a misunderstanding between the government and Rosales about the scope of their dispute.

does not dispute that the TSA could properly search his bag.² But Rosales argues that the TSA's search of the envelope found in his bag was unconstitutional. Rosales compares this case to *United States v. Kroll*, 481 F.2d 884 (8th Cir. 1973), in which the Eighth Circuit found that an airport search of an envelope found in a briefcase exceeded the scope of the search that was permissible under the circumstances.

Recognizing that the facts of this case are almost identical to those in *Kroll*, the government does not attempt to distinguish *Kroll*. Instead, the government emphasizes that the *Kroll* court explained that its holding was based on "the present state of the art of miniaturization of dangerous explosive devices" and acknowledged that it is "entirely conceivable that miniaturization of explosives of sufficient force to constitute a threat to an aircraft could, in the future, be developed to a degree" that could lead to a different result. *Kroll*, 481 F.2d at 887 n.4 (quotations omitted).³ The government argues that the limited holding in *Kroll* does not control this case in light of the existence of new technology such as "sheet explosives," which (as described by the Ninth Circuit) are "thin, flat explosives [which] may be disguised as a simple piece of paper or cardboard, and may be hidden in just about anything, including a laptop, book,

---

²Although Rosales's objections before this Court seem to dispute the validity of the bag search, Rosales conceded before Judge Keyes that the search of the bag was lawful. *See* Docket No. 325 at 2 ("There was probable cause to open the bag as such inspection is consented to by the passenger in an administrative search. . . . But probable cause was lacking to open the envelope.").

³The Eighth Circuit was quoting language from the district-court opinion, which it adopted as its own.

magazine, deck of cards, or packet of photographs." *United States v. McCarty*, 648 F.3d 820, 825 (9th Cir. 2011).[4]

Although it is a close question — particularly given the lack of detail about the discovery of the envelope and why the TSA agent looked inside of it — the Court concludes that the search of the envelope was lawful. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness' . . . ." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The government did not offer direct evidence of the condition of the envelope, but it is reasonable to infer that a standard, business-size envelope containing thousands of dollars of cash — as well as vehicle titles and photographs — would be quite bulky. It was thus reasonable for the TSA to take at least a cursory look in the envelope to confirm that it did not contain sheet explosives.[5] In addition, unlike several recent cases in which courts have held that a TSA agent's search went beyond the permissible scope of an airport-screening search, *see McCarty*, 648 F.3d at 836; *United States v. Fofana*, 620 F. Supp. 2d 857, 863-65 (S.D. Ohio 2009), here there is absolutely

---

[4]The government also points out that the September 11 hijackers were able to take over a plane using thin metal box-cutters and that the TSA prohibits other small potential weapons that could fit in an envelope, such as razor blades. The government fails to note, however, that before Rosales's bag was hand searched, it passed through a magnetometer and an x-ray machine. There is no evidence that anything suspicious was detected by the magnetometer or the x-ray machine. In the absence of such evidence — or evidence that these screening devices would be ineffective to uncover the type of weapons cited by the government — the Court cannot hold that the search of Rosales's envelope was justified by the need to search for box-cutters, razor blades, or similar items. *United States v. Hughes*, 517 F.3d 1013, 1019 (8th Cir. 2008) (government bears the burden of justifying a warrantless search); *McCarty*, 648 F.3d at 835 (noting that an airport-screening search was "appropriately limited where TSA screeners escalated the invasiveness of their search after each level of screening produced a reason to search more closely").

[5]That the TSA agent's search of the envelope was cursory is supported by the fact that he did not count the cash in the envelope.

no evidence that the TSA agent's search was motivated by anything other than legitimate security concerns. The agent did not know that Rosales was under surveillance or even that Rosales was suspected of criminal activity; in fact, the agent permitted Rosales to leave with his cash after the screening procedure was complete. The Court therefore finds that, in light of changes in technology since *Kroll* was decided in 1973, the search of the envelope was within the proper scope of an airport-screening search.

Finally, Rosales also challenges the seizure of his cash by the Airport Police Department, which happened after Rosales voluntarily returned to the screening area and was then brought (along with Perez) to the airport police-operations center.[6] Rosales argues that probable cause for the seizure was lacking and that there was no basis for a warrantless seizure.[7] Although the government contends that there was probable cause, the government does not identify any justification for the warrantless nature of the seizure. Instead, the government essentially argues that the legality of the seizure is moot because it does not intend to introduce the cash into

---

[6]As recounted in the supplemental R&R, the TSA prefers to keep traveling companions together when one of them has been referred to law enforcement. After Rosales was permitted to leave the screening area, a TSA supervisor asked him if he would be willing to return because Perez was being referred to law enforcement. Docket No. 329 at 55. The supervisor specifically informed Rosales that he did not have to accompany her. Docket No. 329 at 55. Rosales readily agreed to return and ultimately agreed to speak with law enforcement. Docket No. 329 at 7, 55.

[7]Under 18 U.S.C. § 981(b)(2)(B), property subject to forfeiture may be seized without a warrant if it is seized pursuant to a lawful arrest or search, or if another exception to the Fourth Amendment warrant requirement applies. Judge Keyes concluded that the exigent-circumstances exception applied to the seizure of Rosales's cash, but Judge Keyes did not analyze the issue because it appeared that Rosales was only disputing whether there was probable cause for the seizure. In his objections, however, Rosales makes clear that he does not concede the existence of exigent circumstances. Docket No. 333 at 5.

evidence at trial. Taking the government at its word, the Court will deny Rosales's motion to suppress evidence of the seizure as moot.[8]

ORDER

Based on all of the files, records, and proceedings herein, the Court ADOPTS IN PART the October 28, 2011 supplemental R&R [Docket No. 330] insofar as the R&R recommends the denial of Rosales's motion to suppress evidence of the results of the July 31, 2010 search of Rosales by agents of the Transportation Security Administration. Accordingly, IT IS HEREBY ORDERED THAT:

1. Rosales's motion to suppress physical evidence [Docket No. 204] is DENIED IN PART and DENIED AS MOOT IN PART.

2. Insofar as Rosales seeks to suppress evidence of the results of the July 31, 2010 search by agents of the Transportation Security Administration, his motion is DENIED.

3. Insofar as Rosales seeks to suppress evidence obtained as a result of the seizure of his cash by the Airport Police Department, his motion is DENIED AS MOOT.

Dated: November 30, 2011     s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge

---

[8] As noted earlier, the TSA agent who initially found Rosales's cash did not count it, but only estimated that it was more than $5,000. As far as the Court can tell, it was not until after the cash was seized that the exact amount was determined. The government's knowledge of the exact amount therefore appears to be the fruit of the seizure rather than of the earlier search. In light of the government's failure to defend the warrantless nature of the seizure, it does not appear that the government will be able to introduce evidence concerning the exact amount of the cash, but will instead be limited to relying on the TSA agent's estimate.